No. 4617.

STATE OF LOUISIANA ex rel. LOUISIANA LEVEE COMPANY *v.* CHARLES
CLINTON, Auditor.

The amendment of the constitution of the State, ratified on the seventh of November, 1870,
which limits the State debt to $25,000,000, is not violated by the law creating the Levee
Company. The bonds of the State are not out, nor is any one its creditor, nor can any
one become its creditor, for any sum contracted for by the Levee Company.

It is not for the court, in this case, to determine that the payments demanded are, or are not,
without a valid consideration. It has only to decide whether the acts relating to the
Levee Board are constitutional or not.

The act No. 27, 1871, which ratifies and confirms the contract between the Levee Company
and the Governor, is, after all, an act of the Legislature, and is valid unless conflicting
with the constitution of the State, and this has not been shown.

The constructing of levees for the protection of lands subject to overflows is not made at the
expense of the State treasury. That expense is met by a general tax on all the tax-
able property of the people of the State. The Legislature had the power to impose that
tax and to appropriate it as they saw fit. They create no debt which goes beyond the
constitutional limitation, and in the acts referring to the general levee tax have violated
no provision of the constitution.

APPEAL from the Superior District Court, parish of Orleans. *Haw-*
*kins,* J. *Armand Pitot, Semmes & Mott, H. C. Dibble,* for relators
and appellees. *A. P. Field,* Attorney General, *J. S. Whitaker, J. B.*
*Cotton, J. Q. A. Fellows,* for defendant and appellant.

MORGAN, J. On the twentieth of February, 1871, the Legislature.
passed an act "relative to the Louisiana Levee Company, a corpora-
tion organized under the general laws of the State, constituting it a
body politic and corporate, with certain powers, privileges and fran-
chises, and contracting with the said corporation for the construction,
maintenance and repairs of certain levees, and providing for compen-
sation therefor."

The relators declare that they have entered upon the duties imposed
upon them by the act of incorporation above set forth, and have com-
pleted large works in accordance with their duties thereunder, and
thus that they have protected from overflow a great portion of Lou-
isiana at an expense of $767,000, while they have only received there-
for some $400,000. They aver that in order to enable them to pay for
the works contemplated by the act, already executed, and to be execut-
ed, the State has authorized the levying and collection of a tax of two ·
mills upon the dollar of the assessed value of the taxable property of
the State, to be set apart as a special fund to be known as the "Levee
Construction Fund," and an additional tax of two-tenths of one per
centum upon the assessed value of the taxable property of the State,
to be set apart and known as the "Levee Repair Fund."

They aver that said taxes have been and are being collected and set
apart as provided by law, and have been in part paid to the Louisiana
Levee Company on the order of the president of said company, as
money belonging to the same, and that said taxes are not funds belong-

ing to the State, which could lawfully be appropriated for any of the expenses or indebtedness of the State.

They aver that there is now in the treasury a sum of $13,000 belonging to said levee construction fund and to said levee repair fund, for which they have drawn according to law for $6000 each, for which orders Charles Clinton, the Auditor of the State of Louisiana, refuses to give the necessary warrants on the State treasury, in violation of the law and of the vested rights of the relators. They pray for a mandamus against the Auditor directing him to issue warrants in their favor on the State Treasurer for the payment of the two orders for $6000 each.

The Auditor, after filing a declinatory exception, answered, through the Attorney General, who is herein acting as counsel designated by law to the Auditor, as well as in his official capacity representing the State, and says:

*First*—That the act of the Legislature relative to the Louisiana Levee Company, and the act confirming a contract between the Louisiana Levee Company and the Governor of the State, approved twenty-eighth February, 1871, providing for an annual collection by taxation and appropriation to said company for twenty-one years of about one million dollars each, are unconstitutional, illegal, null and void, because they are in violation of the —— amendment to the constitution of the State of Louisiana limiting the State debt to $25,000,000, and of articles 110, 114 and 115 of the constitution of the State.

*Second*—That the payments demanded in the petition are without a valid consideration, and made to a person, a private corporation, having no legal claim upon the State, to be paid out of the revenues derived from the taxation of the property of the citizens and others owning property subject to taxation, and upon whom rested no legal or equitable obligation to contribute to the payment thereof.

*Third*—That the State Legislature had no power to authorize the Governor of the State to enter into the contract contained in the acts Nos. 4 and 27, nor to incur the obligations contained in the contract; that the proprietors of property fronting on the water courses of Louisiana, subject to overflow, had contracted in the original purchase of the property, to build and keep up the levees, and had, in consequence, purchased their lands at a much reduced price; that the leveeing and draining of lands subject to overflow at the expense of the State treasury, or by a general taxation on all the taxable property in the State, would be the enrichment of a portion of the people of Louisiana by making their property much more valuable and at the expense of other citizens and tax payers of the State; that it would be the taking of the property of one citizen or class of citizens for the benefit of another, and without a proper and adequate, or in fact any consider-

ation whatever, and is in violation of the constitution of the State and of the United States.

*Fourth*—That the funds claimed are derived from the general taxation of the property of the State for the enrichment of the plaintiff, a private corporation, and for the enhancement of the property of a small portion of the property holders in the State, and that it was not in the power of the State to grant said funds, or to authorize the making of said contract; that the obligations created by the acts Nos. 4 and 27 is a debt of upward of $20,000,000, attempted to be created at a time when the State debt exceeded $25,000,000, and subsequent to the promulgation of the constitutional amendment limiting the State debt to $25,000,000; that so long as the State debt shall exceed $25,000,000, the Legislature can not make appropriations or authorize contracts, except for such purposes as are absolutely required and necessary for carrying on the government; that the work claimed to have been done and to be now being done by the plaintiff is not one of those necessary works or expenses for the carrying on the government, but is a work of internal improvement, which, at all times doubtful as a function of government, was designed to be prohibited by the amendment to the constitution limiting the State debt.

*First*—We do not see in what manner the —— amendment of the constitution of the State, which limits the State debt to $25,000,000, is violated by the law creating the Levee Company. The State has created no debt in their favor. It has assumed no responsibility on their account. It does not pay or order to be paid any money out of the funds of the treasury proper. The State incorporated the company, giving it certain rights and privileges, and imposing heavy burdens upon it at the same time. It contracted with the company with regard to a work of great public utility. To secure the company they imposed a general tax upon all the property of the State, and made it the duty of the tax collectors to collect the same and to deposit the sums collected in the treasury, but it provided at the same time that the moneys so collected should be placed to the credit of a certain fund, to be drawn upon by the officers of the company. But this does not create a liability on the part of the State. The State does not pay. Its bonds are not out, nor is any one its creditor, nor can they be its creditor for any sum contracted for by the Levee Company.

*Second*—It is not for us to determine that the payments demanded are without a valid consideration. We have only to determine whether the acts relating to the Levee Board are constitutional or not.

*Third*—The act No. 27, which ratifies and confirms the contract between the levee company and the Governor is, after all, an act of the Legislature, and is valid unless it conflicts with the constitution of the

State, and we have not been referred to the article with which it is in conflict.

The other objections to the act do not strike us with much force. The leveeing of the land subject to overflow is not made at the expense of the State treasury. It is, as is stated, made by a general tax on all the taxable property of the State, but the Legislature had the power to impose that tax, and to appropriate it as it saw fit.

*Fourth*—It is true that the funds claimed are derived from the general taxation of the property of the State, and it may be that it will result in the enrichment of the levee company; but the State had the power to levy the tax, and the profit would depend upon the perfection of the company's work. By the law under which they are acting, they are responsible to the owners of property who suffer damage by reason of their negligence or want of skill. A crevasse at Grand Levee, or at Kenner, or at any one of the several other points on the river, caused by their negligence in maintaining these levees up to the standard required by the law, as evidenced by the report of commissioners to whom such matters are intrusted, would cause more damage to the company than the amount of the taxes to which they would be entitled. But these are questions with which, in reality, we have nothing to do. The only matters which we are called upon to decide, are whether the acts of the Legislature, in themselves, violate any of the articles of our constitution, and whether the Legislature has created a debt which goes beyond the constitutional limitation. We do not find that these acts do violate any provision of the constitution, or that it creates a debt. We therefore think the company entitled to the money which it claims, and that the mandamus properly issued.

It is therefore ordered, adjudged and decreed, that the judgment of the lower court be affirmed, with costs.

---

LUDELING, C. J. I doubt the right of the defendant to raise the questions presented for decision in this case.

He has no real or actual interest involved in this controversy.

If, however, I be mistaken in this, then I concur in the opinion of the majority of the court.

Under either hypothesis I concur in the decree.

Rehearing refused.